### HAUGEN et al. v. The CAPE KARLUK et al. The SHELIKOF.
### No. 15658.

United States District Court
W. D. Washington, N. D.
April 14, 1952.

G. Bradley Dalton, Seattle, Wash., for Ludwik Haugen.

Thomas L. Morrow, Bogle, Bogle & Gates, Seattle, Wash., for Lee H. Wakefield et al.

BOWEN, District Judge.

Action for salvage awards for maritime services performed in Alaska waters.

The Court: From the preponderance of the evidence, the Court finds, concludes and decides:

■ That there is not sufficient evidence of lack of good faith and fair dealing on the part of the salvors subsequent to the rendering of the alleged salvage services to justify the Court in reducing any award found by the Court otherwise properly allowable to the salvors.

■ That although two vessels other than the salving vessel were to the extent of their ability available to render assistance, that circumstance does not change the character of the salvors services from salvage to towage, because such two other available vessels were not sufficiently equipped for towage to be relied upon to rescue the Karluk from her distressed condition, and at most would have been able only to save the lives of the Karluk's crew, if that had become necessary.

■ That the Karluk was in fact in great danger of sinking and becoming a total loss. Her skipper and all of her crew members were convinced of that fact before the Shelikof began to render assistance. No better proof of that could be cited than the facts that Captain Langbakk of the Karluk almost immediately after the initial listing of the Karluk ordered her fishing seine and skiff cast away; thereupon her seine and skiff lashings were cut and the seine and skiff were put into the sea; the skipper of the Karluk then ordered the boom shifted to the side of the vessel opposite the listing side; immediately following both of these operations, there was some improvement in the vessel's listing condition, but still the Karluk's skipper sought and received the assistance of the Shelikof, one of the two other available vessels tried to recover the seine from the sea but failed and the seine was a total loss, and the Court finds that the dangerous condition of the Karluk required such assistance in order to properly safeguard the Karluk and prevent her from grave danger of becoming a complete loss.

That the crew members of the Karluk considered themselves in danger as to their own personal safety. That is evidenced by the fact that four of them got into the skiff of the Karluk after it was put in the water, and by the fact that the other crew members chose the positions of greatest safety for them at different places about the Karluk.

That it is not reasonable to suppose that any fishing vessel skipper would have dumped overboard into the sea any $12,000 fishing seine, which the court finds was the value of the Karluk's fishing seine, unless he was unquestionably convinced that such action was necessary to save the vessel.

That, except with respect to the work of getting the towline on the Karluk, the court is not so strongly impressed as to the contribution of danger by the prevailing thirty mile wind that was present at the beginning of the towage, but the court finds that the force of the wind and the seas very substantially increased so as to greatly add to the dangerous position of the Karluk while she was being towed by the Shelikof.

The continuing unsafe condition of the Karluk is unmistakably manifested by the circumstance that, after the one remaining Karluk crewman left the Karluk's skiff, which itself had for several hours after the towing began followed at the end of a towline, the skiff swamped and while efforts were being exerted to recover the skiff, the Karluk listed again. I do not see how listing for a second time on the part of the Karluk could be considered as anything other than proof that her instability had continued at least up to that moment.

There is no doubt in the court's mind that a fishing vessel of the size and type of the Karluk, in the presence of strong winds and seas, with a large percentage of her cargo space filled with a mass of shifting small fish like herring, described by the witnesses as in a soupy condition, but with some open space yet remaining between the top of that shifting cargo and the deck or deck beams above, and with the centerboards out of place and not functioning, all of which was established by a preponderance of the evidence in this case to have been the condition in the hold of the Karluk, would be in the worst possible condition of instability. That such, the court finds, was the condition of the Karluk at all times during the towing operation until the force of winds and seas abated.

The court finds that the immediate danger of the Karluk, her cargo and crew ended about the time or shortly before the time that the Shelikof's towline finally parted, the court finding in that connection that the dangerous force of the wind and seas had then abated and the two vessels had arrived in waters that were relatively calm in comparison with the waters in which the vessels had been proceeding previously during the time when the Shelikof was towing the Karluk.

As to the danger to the towing vessel, the Shelikof, and the risks which that vessel and her crew members took, the court finds that there was some chance that in the presence of the wind and seas then prevailing the Shelikof might have become in collision with the Karluk at the time when the Shelikof was trying to get a heaving line and the towline from the Shelikof aboard the Karluk, and although the Shelikof's skipper got on the comparatively quiet water side of the Karluk and got within about ten feet of her, there was danger that in that kind of an operation, under the effect of the wind then prevailing, the Shelikof might have collided with the Karluk and might have caused damage to the Shelikof as well as to the Karluk, might have endangered the Shelikof's crew members, and also might have added further danger to the safety of all persons at that time on board the Karluk. So that the court is of the opinion that the Shelikof risked its safety to at least some appreciable degree when the Shelikof was attempting to get a line aboard the Karluk.

Notwithstanding the dangers present, the skipper and crew of the Shelikof so conducted themselves and so skillfully maneuvered the Shelikof that damage and injury to Shelikof and Karluk and their respective crews were prevented while getting the towline on the Karluk.

The court further finds that after the Shelikof got under way with the Karluk in tow, the towing operation was skillfully and successfully conducted by the skipper and crew of the Shelikof until the towline parted. That, nevertheless, she risked damage to her deck structure and to her winch until finally the towline parted.

■ That the preponderance of the evidence clearly convinces the court that the services and assistance rendered to the Karluk and her skipper and crew, while not of the highest salvage rank, were of a meritorious order in the nature of salvage assistance and not merely towage service.

■ In view of the foregoing, and from the preponderance of all the evidence in this case, the court further finds, concludes and decides that salvage awards to the motor vessel Shelikof, her skipper and all her crew members would be reasonable and should be made in the following sums, respectively:

To the Shelikof, $800, including the value of her services as the salving vessel, and including any and all damage which she may have sustained in respect to the working of her deck boards and her winch and winch foundation, and including the damage to her towline;

To the Shelikof's skipper, $350;

To the eight remaining members of the Shelikof's crew, the total sum of $600, of which each one of said remaining eight crewmen shall receive an equal share; the aggregate total of such salvage awards being the sum of $1750.